UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

      -v-                                             07 Cr. 736 (S-1) (CPS)

RICARDO FANCHINI,

                         Defendant.

------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT RICARDO FANCHINI'S MOTIONS FOR
EXPEDITED DISCOVERY AND TEMPORARY RELEASE
NECESSARY FOR PREPARATION OF HIS DEFENSE**

GERALD L. SHARGEL
HENRY E. MAZUREK
EVAN L. LIPTON
Law Offices of Gerald L. Shargel
570 Lexington Avenue, 45th Floor
New York, New York 10022
(212) 446-2323
*Attorneys for Ricardo Fanchini*

# TABLE OF CONTENTS

**TABLE OF CONTENTS**……………………………………………………......i

**TABLEOF AUTHORITIES**……………………………………………....…....ii,iii

**I. STATEMENT OF FACTS AND PROCEDURAL HISTORY** ………..……..3

    A. The Indictment, Arrest and Extradition of Ricardo Fanchini…………………..3

    B. The Government's Discovery Efforts………………………………………..5

    C. Mr. Fanchini's Current Conditions at the MDC……………………………..8

**II. ARGUMENT**……………………………………………………………..11

    A. The Court should Order the Government: (1) To Allow Defense Counsel
       Equal Access to Foreign Investigative Files in the Government's Custody
       And Control; (2) To Produce English Translations of All Discoverable Foreign
       Language Documents Sufficiently in Advance of the Pre-trial Motions Return
       Date; and (3) To Set a date Certain for Completion of
       Discovery…………………………………………………………………...11

        1. The Government's Rule 16 Obligations …………………………………..12

        2. The Government's <u>Brady/Giglio</u> Obligations……………………………...13

        3. The Need for a Date Certain to Complete Discovery……………………...15

    B. Because Mr. Fanchini's Current Conditions of Confinement at the MDC
       Violate his Constitutional Due Process Rights and Right to Counsel,
       This Court Should Exercise its Authority under 18 U.S.C § 3142(i) and
       Order Mr. Fanchini's Temporary Release to Defense Counsel's Law Offices
       Under the Custody of a Private Security Agency Paid by Mr. Fanchini so that
       he May Have a Meaningful Opportunity to Prepare His
       Defense……………………………………………………………………..16

        1.  Punitive Conditions of Confinement for Pre-trial Detainees Violate the
           Due Process Clause of the Fifth Amendment and the Sixth Amendment
           Right to Effective Counsel……………………………………………..17

        2.  Mr Fanchini's Current Conditions of Confinement Infringe Upon his
           Constitutional Rights to Due Process and Effective Counsel……………20

        3.  This Court Has Authority Pursuant to 18 U.S.C. § 3142(i) to Order Mr.
           Fanchini's Temporary Daytime Release to Review Discovery………......22

**III. CONCLUSION**………………………………………………………....25

i

# Table of Authorities

## Cases

Bell v. Wolfish, 441 U.S. 520 (1979)…………………………………………………....…..21

Benjamin v. Fraser, 264 F.3d 175 (2d Cir. 2001)……………………………………....19,20

Brady v. Maryland, 373 U.S. 83 (1963)………………………………………………...……14

Campbell v. Magruder, 580 F.2d 521 (D.C. Cir. 1978)……………………………………18

Giglio v. United States, 405 U.S. 150 (1972)……………………………………………14

Johnson-El v. Schoemehl, 878 F.2d 1043 (8th Cir. 1989)……………………….…………20

Lynch v. Leis, No. C-1-00-274, 2002 U.S. Dist. LEXIS 27604 (S.D. Ohio Feb. 19, 2002)…….20

McGinnis v. Royster, 410 U.S. 263 (1973)………………………………...……18,19

Turner v. Safley, 482 U.S. 78 (1987)……………………………………………....…..19

Wolfish v. Levi, 573 F.2d 118 (2d Cir. 1978)……………………………...………..21

United States v. Agurs, 427 U.S. 97 (1976)…………………………………………....…14

United States v. Bagley, 473 U.S. 667 (1985)………………………………...………14

United States v. Brooks, No. 06 Cr. 550 (E.D.N.Y. Jan. 3, 2008)………………...………...23

United States v. El-Hage, 213 F.3d 74 (2d Cir. 2000)………………………………...19

United States v. Freedman, 688 F.2d 1364 (11th Cir. 1982)………………………..………11

United States v. Gonzales Claudio, 806 F.2d 334 (2d Cir. 1986)…………………………...…19

United States v. Sabhnani, 493 F.3d 63 (2d Cir. 2007)……………………………………22

United States v. Valenzuela-Bernal, 458 U.S. 858 (1982)………………………………14

**Statutes**

18 U.S.C. § 3142(i)……………………………………………………………passim

**Treatises**

4 William Blackstone, Commentaries at 300 (2004 ed.)………………..……………………17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA

     -v-                          07 Cr. 736 (S-1) (CPS)

RICARDO FANCHINI,

                     Defendant.
-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RICARDO FANCHINI'S MOTIONS FOR EXPEDITED DISCOVERY AND TEMPORARY RELEASE <u>NECESSARY FOR PREPARATION OF HIS DEFENSE</u>

This memorandum of law is submitted in support of two interrelated pre-trial motions that are now timely.

As the Court is aware, Mr. Fanchini is charged in a wide-ranging Superseding Indictment alleging that he engaged in a continuing criminal enterprise ("CCE") involving sixteen different violations of the federal drug laws. <u>See</u> S-1 Indictment, Count One. The Indictment also charges six additional counts of violations of the federal drug statutes, mirroring many of the violations charged in the CCE count, and one count of money laundering conspiracy. <u>See</u> S-1 Indictment, Counts Two through Eight. Lastly, the Indictment makes several criminal forfeiture allegations.

Mr. Fanchini was arraigned on this Indictment before Magistrate Judge Viktor V. Pohorelsky on February 1, 2008, and made his initial appearance in the District Court on February 11, 2008. <u>See</u> 07 Cr. 736 (S-1) (CPS), Docket Entries No. 5 and 13. An order of pre-trial detention was originally entered against Mr. Fanchini at his

arraignment and the magistrate's order was continued by this Court. Id., Docket Entry No. 7.  Mr. Fanchini is now being held at the Metropolitan Detention Center ("MDC") in Brooklyn, pursuant to the Court's detention order.

The government has been producing discovery on a rolling basis in this matter over the last four months.  However, two issues have now arisen that require this Court's involvement.  While the government has produced over 40 boxes of documents to date and hundreds of hours of recorded audio files, government counsel has recently reported that the materials thus far produced represent only about one-third of the total universe of materials.  (See Mazurek Aff. ¶ 4.)  The government's discovery disclosures have been complicated by the fact that the materials are largely the product of foreign government investigations and most of the documents and recordings are not in the English language.  Accordingly, the government has reported that discovery production is expected to continue over the next several months, with an estimated completion date of October, 2008.  (Id.)  Discovery delays, therefore, threaten to delay the scheduled trial date in this matter, which has been set by the Court for January 12, 2009.

Further, the discovery production made to date by the government, consisting of tens of thousands of pages of document discovery and hundreds of hours of audio recordings, cannot be adequately reviewed by Mr. Fanchini under his current incarceration conditions at the MDC.

For the reasons that follow, therefore, Mr. Fanchini seeks the following relief:

(1)    An order requiring the government to make available to defense counsel all foreign source evidence or to provide equal access to defense counsel to inspect foreign documents at a reasonable time and place;

(2)    An order requiring the government to complete discovery by a date certain, but not later than August 1, 2008; so as to ensure that this production is meaningful to the defense and to avoid further delay, all

foreign language documents that the government intends to introduce in its case-in-chief, or are otherwise discoverable[1] are to be translated into English as part of the Rule 16(a) disclosure requirements; and

(3)    An order, pursuant to 18 U.S.C. § 3142(i), authorizing the temporary release of Mr. Fanchini to the custody of a pre-approved private security agency for travel to and from defense counsel's office as necessary for Mr. Fanchini to review discovery with his counsel and prepare for trial.

# I.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The defendant, Ricardo Fanchini, legally named Riccardo Rotmann in his home country, is a Polish-born German national.  He is 53 years old and most recently resided in London, England with his wife and young son.  Mr. Fanchini is an accomplished business owner and real estate investor.  In one of his more high profile endeavors, he was part owner and an executive officer in Kremlyovskaya Vodka, a Belgian company that produced and distributed vodka throughout much of Europe.

### A.  THE INDICTMENT, ARREST AND EXTRADITION OF RICARDO FANCHINI

The government now alleges by this superseding Indictment, *inter alia*, that Mr. Fanchini's legitimate business ventures were financed with proceeds of international narcotics trafficking.  Mr. Fanchini vigorously denies these claims.  The government's evidence in this case is largely an amalgam of different foreign investigative files from a few European countries – countries in which Mr. Fanchini was never arrested or charged with violations of narcotics laws.  The U.S. government has obtained, or is in the process of obtaining, these foreign law enforcement files from the Netherlands,

---

[1] See Defense Discovery Letter, dated February 27, 2008, attached as Exhibit C.

Belgium, Russia and Spain.  Very little evidence in this case originated from United States law enforcement efforts.

Also, relevant to the discovery issues discussed herein, the charges in the pending Superseding Indictment span a considerable time period.  Count One, the CCE charge, includes alleged narcotics violations spanning seventeen years, from 1990 through 2007. See S-1 Indictment, ¶¶ 1-4.  As far as can be determined from the Indictment and materials received in discovery to date, the substantive allegations against Mr. Fanchini include the following:  (1) importation of heroin into the United States, apparently through several couriers traveling on airplanes, from in or about February to June 1991; (2) an attempt to distribute and possess with the intent to distribute cocaine in the Eastern District of New York from 1997 to 1999, apparently through the use of a yacht that was at one time partly owned by Mr. Fanchini; (3) the international distribution of MDMA, or "ecstasy" pills, from January 2001 through April 2002, with knowledge and intent that these substances would be unlawfully imported into the United States; (4) importation of cocaine to the District of South Carolina from January 2004 to January 2005; and (5) an attempt to distribute and posses with the intent to distribute cocaine within the Eastern District of New York from January 2005 to October 2007. (S-1 Indictment, ¶¶ 1-17.)  Only the latter two violations fall within the general federal limitations period of five years.

The original Indictment and arrest warrant was unsealed by Magistrate Judge Roanne L. Mann on September 9, 2007. (See Docket Entry No. 10.)  The original Indictment did not include Count One of the Superseding Indictment, the mandatory life CCE charge.  On October 3, 2007, Mr. Fanchini was arrested in London, England on an

extradition warrant.  He was detained in a London jail until an extradition order was entered by the British Secretary of State on January 7, 2008.

On February 1, 2008, Mr. Fanchini arrived in New York.  He was arraigned on a Superseding Indictment – adding the CCE count – before Magistrate Judge Pohorelsky. (See Docket Entry No. 5.)  The government moved for Mr. Fanchini's detention and the order was entered without objection by the defense on the condition that the order did not prejudice Mr. Fanchini from presenting a bail package sometime later in the proceedings should an appropriate bail package become available. (Id., at No. 7.)

## B.  THE GOVERNMENT'S DISCOVERY EFFORTS

On February 11, 2008, Mr. Fanchini made his initial appearance before this Court. (See Docket Entry No. 13.)  At that time, as is the Court's practice, a Pretrial Scheduling Order was entered. (Id., No. 14.)  This schedule set the following dates:  (1) pretrial motions to be made returnable on or before June 23, 2008; (2) pretrial conference set for December 8, 2008; and (3) trial scheduled for January 12, 2009. (Id.) The government agreed to provide discovery to the defense on a continuing, rolling basis.

An initial set of wiretap recordings and transcripts were provided by the government immediately.  These materials included thousands of audio files of varying length, and approximately 4,400 pages of transcripts. (See Mazurek Aff., ¶ 4.)  The recordings included conversations made in different languages, including Russian, German, Polish and Spanish. (Id.)

The next set of discovery materials was made available at a private duplicating center on April 24, 2008, and was delivered to defense counsel's office on May 7,

2008.[2] (See Docket Entry No. 24.)  These materials generally included applications and orders for electronic surveillance of several telephone numbers and email accounts; approximately 4,800 pages of documents seized from Mr. Facnhini's London residence; approximately 2,000 pages of a Dutch investigative file, the majority of which is not in English; approximately 28 boxes of documents seized from a co-defendant's business; and discs containing hundreds of unlabeled audio files in foreign languages derived from foreign wiretaps.  (See Mazurek Aff., ¶ 4.)

    Another set of materials was made available at a private duplicating center on May 8, 2008.  (See Docket Entry No. 25.)  These materials included Spanish language audio and video recordings; English transcripts of some of these recordings; various documents related to Mr. Fanchini; and various business documents allegedly related to the allegations in the indictment.  (See Mazurek Aff., ¶ 4.)

    Based on the timing of the production of these latter two sets of materials, made less than sixty days before the initial return date for pretrial motions, counsel for Mr. Fanchini moved the Court for an adjournment of the motions date. (See Exhibit A, Letter of Henry E. Mazurek, Esq., dated May 12, 2008.)  A conference was held on May 28, 2008 to hear this motion and the adjournment was granted.

    At the May 28 conference, the Court first inquired if the government had decided whether to consolidate this Indictment with a related case pending before the

---

[2] With the exception of the first discovery production, which was delivered directly to defense counsel, the production procedure has been as follows: The government sends a letter to defense counsel indicating that certain documents or recordings are available at a duplicating company; defense counsel must then order the items from the duplicating company.  Turnaround time has been approximately one week.  Once defense counsel obtains the documents, office staff must repackage the documents and send them to Mr. Fanchini at the MDC.

Court, <u>United States v. Dozortsez, *et al.*</u>, 08 Cr. 44 (CPS) – an issue that was first raised at Mr. Fanchini's initial appearance on February 11. (<u>See</u> T: l. 19-25, p. 2, 5/28/08.) When the government failed to provide a definitive answer, the Court set a deadline of June 23, 2008 for the government to file any motion to consolidate the cases. (T: l. 24-25, p. 3 and l. 1-7, p. 4, 5/28/08.) The Court then instructed defense counsel to file a motion to expedite discovery "as soon as you're in jeopardy of not being ready to try the case in January." (T: l. 10-12, p. 5, 5/28/08.)

In compliance with Local Criminal Rule 16.1, and in an effort to determine when discovery would be completed by the government and how much of it was still outstanding, government and defense counsel conferred on two occasions. First, counsel discussed the state of discovery on the evening prior to the May 28 conference. Next, the parties met immediately after the Court appearance on that day. (Mazurek Aff., ¶ 4.) The following information was gleaned from these meetings:

1.   The government believes it has provided to date only one-third of the total amount of discovery in the case. Discovery has been delayed because the government is relying on obtaining foreign government files as a primary source of evidence against Mr. Fanchini. The government claims that it still has two large amounts of discovery materials to produce from Dutch and Russian government sources.

2.   In the Russian government file alone, the government estimates that there are over 200 tapes of recorded conversations relevant to this case. In addition, there is an unknown amount of written materials. These materials are almost entirely, if not entirely, in languages other than English.

3.   The government has contracted with different translation services to translate all discoverable foreign language materials into English. This process, however, is particularly tedious and slow. According to government estimates, two to three months

are needed to translate 1,000 pages of materials.

4.      In order to expedite the production of this foreign source evidence, the government has informed defense counsel that it intends to travel overseas in the coming months to meet with foreign law enforcement agents who will identify the documents and recordings that are relevant to this case.  The government will then translate and review those materials identified by the foreign agents to determine what to produce in discovery.

5.      The government intends to produce shortly the following materials:  (1) excerpts from a Dutch investigative file dating back to the early 1990s alleging Mr. Fanchini's use of a marketing company called M&S, Inc., in trafficking in narcotics, and (2) a prior case file in the Eastern District of New York involving couriers who transported heroin to New York also in the early 1990s.  These materials have not yet been produced.

6.      The government estimates that the other foreign source evidence that it intends to use at trial will not be completely produced, with English translations, until October 2008.

(See Mazurek Aff., ¶ 4.)

At the May 28, 2008 conference date, the Court re-set the return date for substantive motions to September 15, 2008.  (T: l. 11, p. 6, 5/28/08.)  Obviously, if the government expects discovery production to continue through October, Mr. Fanchini cannot file all substantive motions by the return date scheduled in September.

### C.  MR. FANCHINI'S CURRENT CONDITIONS AT THE MDC

As explained above, Mr. Fanchini is being held without bail at the MDC Brooklyn.  His current state of incarceration there does not allow him to adequately assist in the preparation of his defense.

Mr. Fanchini is currently housed at the East building of the MDC. This is the older of the two MDC buildings. It contains dormitory-style detention units, meaning that approximately 120 inmates are housed in a single unit. (See Fanchini Aff., ¶ 3, attached as Exhibit B.) All inmates in a unit share the same common space and are given a bunk bed space for sleeping. Despite his age and a documented back ailment, Mr. Fanchini was assigned to a top bunk. (Id.; see also, Inmate Request to Staff, dated June 6, 2008, attached as Exhibit C.) This bunk bed represents the only private space available to Mr. Fanchini in his unit. Mr. Fanchini has attempted to use the common space available in the unit to read discovery and prepare his case but has repeatedly been told to leave. (Id., ¶ 7.)

Mr. Fanchini also has not been able to maintain his discovery materials within the dormitory unit in which he is housed. Because he has no private space, other inmates are able to rummage through his materials, read his documents, and use them for their own purposes. (Id., ¶ 6.) Despite the fact that he had requested from his MDC counselor over one month ago that a private storage bin be made available to him, he has not received one. (Id.) He, therefore, has not been able to keep intact the discovery materials that defense counsel sent to him to date, which, in total, include boxes and envelopes containing almost 8,000 pages. According to government estimates, there are at least another 40 boxes of materials to be produced in discovery.

The government has also produced compact discs containing intercepted recordings of conversations. These are expected to include hundreds of hours of recording time, most of which is not in the English language. At this date, defense counsel has sent *merely one disc* of such recordings to the MDC for Mr. Fanchini's

review.  Because inmates are not allowed to keep compact discs within their unit, all

discs must be stored at the law library and can only be reviewed there.  (Id.)  Mr.

Fanchini has been told that he is afforded only two hours per week at the law library to

access his electronic discovery. (Id., ¶ 8.)  Despite repeated attempts to access the law

library for his two-hour slot, he has been refused because other people in his unit were

using the computer or law library facilities and no space was available for him. (Id.)  He

has yet to review even the single disc of recordings, totaling approximately 12 hours of

materials, that was sent to him by defense counsel. (Id., ¶ 9.)  The government already

has produced several discs of recordings and expects hundreds of additional hours of

recordings to be produced shortly.

Defense counsel has communicated these problems to both legal counsel at the

MDC and to the government.   Legal counsel for the MDC, Adam Johnson, Esq., has

responded by attempting to arrange Mr. Fanchini's transfer from the East to the West

building of the MDC.  (See Mazurek Aff., ¶ 5.)  As of the date of this motion, the

transfer has not occurred.  (Id.)  While the West building is set up with two-person cells

that provide more inmate privacy, it also has little space to accommodate the storage of

40 or more boxes of discovery material for Mr. Fanchini's review.  (Id.)  Moreover, no

accommodations have been discussed to manage the large amount of electronic

discovery that must also be reviewed by Mr. Fanchini in advance of filing pretrial

motions and trial.  Mr. Fanchini's personal review of the electronic discovery is

necessary in order for defense counsel to determine which recordings contain his voice,

a threshold requirement to determine his standing to challenge the admissibility of the

wiretaps.

Defense counsel has been attempting to work out these issues with the MDC over the last month, but as indicated above, has not been able to improve Mr. Fanchini's detention conditions to enable adequate discovery review and trial preparation.

## II.

## ARGUMENT

**A.    THE COURT SHOULD ORDER THE GOVERNMENT: (1) TO ALLOW DEFENSE COUNSEL EQUAL ACCESS TO FOREIGN INVESTIGATIVE FILES IN THE GOVERNMENT'S CUSTODY AND CONTROL; (2) TO PRODUCE ENGLISH TRANSLATIONS OF ALL DISCOVERABLE FOREIGN LANGUAGE DOCUMENTS SUFFICIENTLY IN ADVANCE OF THE PRETRIAL MOTIONS RETURN DATE; AND (3) TO SET A DATE CERTAIN FOR COMPLETION OF DISCOVERY**

The trial court has broad discretion regarding discovery matters, including the discretion to determine the manner, timing and cost of producing documents. See United States v. Freedman, 688 F.2d 1364, 1366 (11th Cir. 1982).

As explained in the factual background section above, the government in this case has been producing discovery periodically over the last four months since Mr. Fanchini's initial appearance before this Court on February 11, 2008. Despite this fact, the government has indicated that it has only produced approximately one-third of the total information subject to disclosure. (See Mazurek Aff., ¶ 4.) The government further contends that because the bulk of the remaining materials are from foreign government files, and is largely in languages other than English, the process to obtain, translate and produce these materials is expected to continue over the next several months. (Id.) According to the government's estimates, it does not expect completion of discovery until October 2008. (Id.)

The government has offered to expedite the production of these foreign files, apparently being obtained from Dutch and Russian law enforcement agencies, by

traveling to the location of the foreign source files, meeting with relevant foreign government agents, and determining from foreign law enforcement agents which materials are relevant to the current prosecution. (Id., ¶ 4.)  Mr. Fanchini objects to this procedure as violating his Fifth Amendment right to due process and violating the discovery requirements of Rule 16.  The government cannot abdicate its duties under Rule 16 and rely instead on the judgment of foreign agents to determine if materials should be produced to the defense.

    1.    <u>The Government's Rule 16 Obligations</u>

Rule 16(a)(E) specifically states:

> [U]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense . . . or [ ] the item was obtained from or belongs to the defendant."

Fed. R. Crim. P. 16(a)(E).   In this case, Mr. Fanchini immediately made specific discovery demands in the form of a letter to the government dated February 27, 2008. (<u>See</u> Defense Discovery Letter, attached as Exhibit D.)  The government cannot now absolve itself of its responsibility to respond to the defense demands by relying on the judgment of foreign agents to cull from its files what it believes is necessary for the U.S. government's prosecution of Mr. Fanchini.  These foreign files are "within the government's possession, custody, or control," Fed. R. Crim. P. 16(a)(E), when they are made available to the U.S. government – either by operation of a Mutual Legal Assistance Treaty or other principles of international comity.  Once the U.S. government has authorization to obtain the entire foreign file, it cannot look the other

way and rely upon foreign officers to determine what is relevant and responsive to Rule 16 demands. U.S. government counsel – the party to this litigation – must make the determination of what must be produced in discovery.

Mr. Fanchini appreciates that in this case the government's discovery process is complicated by the fact that the evidence is largely maintained in foreign languages – either written in foreign languages or overheard in audio recordings of intercepted conversations. Without English language translations, Government counsel must necessarily rely on the interpretation of foreign government agents to determine whether this material is discoverable under Rule 16 or pursuant to other constitutional obligations. Obviously, translating the totality of the foreign government files would be prohibitively time consuming and costly. However, because the government is relying upon foreign government agents, *i.e.,* third parties, to discharge its discovery obligations, the government should be required to give equal access to Mr. Fanchini's counsel to confer with these same agents and review these same materials, or retain local counsel within the relevant countries to review the records. Under these unique conditions, it is respectfully submitted, the Court should grant Mr. Fanchini equal access to the foreign source files.

2.    The Government's Brady / Giglio Obligations

It is respectfully submitted that Mr. Fanchini's proposed procedures for producing the foreign-sourced evidence are not only necessary for the government to satisfy its Rule 16 obligations, but also necessary for the government to comply with its constitutional obligations under the Due Process Clause of the Fifth Amendment to disclose evidence favorable to the defendant that is material to either guilt or

punishment. See United States v. Bagley, 473 U.S. 667, 676 (1985); United States v. Agurs, 427 U.S. 97, 110-11 (1976); Giglio v. United States, 405 U.S. 150, 154 (1972); Brady v. Maryland, 373 U.S. 83, 87-88 (1963). The government cannot rely on foreign government agents to make these determinations which affect Mr. Fanchini's fundamental constitutional rights.

The government's failure to make a full set of foreign source materials available to the defense for inspection and review would be analogous to the lack of process ruled unconstitutional by the Supreme Court in United States v. Valenzuela-Bernal, 458 U.S. 858 (1982). In that case, defendant was charged with violations of federal alien smuggling laws. The government unilaterally decided which of the smuggled alien-witnesses to maintain in custody to provide testimony at trial and which to deport before defense counsel had the opportunity to interview them. The Supreme Court ruled that the government can deport "illegal-alien witnesses" only after making a "good faith determination that they possess no evidence favorable to the defendant in a criminal prosecution." Id., 458 U.S. at 872. The Court in Valenzuela-Bernal ruled that dismissal of the indictment should result if there was a "reasonable likelihood that the testimony [of the deported witness] could have affected the judgment of the trier of fact." Id. at 873-4.

In this case, the government likewise is acting to put evidence out of reach of the defense by keeping foreign source files outside of the United States without making a "good faith" determination of what material may be discoverable. The government would either have third parties, i.e. foreign government officials, decide what portions of files to produce or deliberately seek production of only excerpts of investigative files.

14

Such actions deprive Mr. Fanchini of fair and equal access to the evidence that the government has a duty to disclose, either to satisfy its Rule 16 obligations or its obligations under <u>Brady</u> and <u>Giglio</u> and their progeny.

        3.       <u>The Need for a Date Certain to Complete Discovery</u>

Finally, in all events, it is respectfully submitted that the Court should order a date certain for the completion of all government discovery. Almost four and one-half months have passed since Mr. Fanchini was arraigned on the superseding indictment and the government claims that only one-third of the expected discovery has been produced. (<u>See</u> Mazurek Aff., ¶ 4.) It also claimed in its Local Rule 16.1 conference with defense counsel that it does not expect to complete discovery until October 2008. (<u>See id.</u>) While the government conceded that it could have discovery completed by August 2008, it stated that such production would necessarily be in the documents' original foreign languages without English translations. (<u>Id.</u>) Of course, such a production would not advance the case for trial because Mr. Fanchini's counsel would then be forced to begin translations in August and the documents would be useless for possibly months until English translations were prepared.

In short, Mr. Fanchini, who remains in custody, is eager to adhere to the Court's trial schedule. However, unless the Court directs the government to complete discovery on a date reasonably in advance of the return date for pretrial motions, which was recently rescheduled to September 15, 2008, the present trial date of January 12, 2009 will be in jeopardy.

Accordingly, Mr. Fanchini respectfully requests that the Court set a date of August 1, 2008 for the government to complete discovery, and that this production

include English translations of all foreign language documents that are discoverable, pursuant to either Rule 16 or the United States Constitution.  This date would give sufficient time for Mr. Fanchini to file his pretrial motions on a schedule that would allow for the motions to be argued on September 15, 2008.

    **B.**    **BECAUSE MR. FANCHINI'S CURRENT CONDITIONS OF CONFINEMENT AT THE MDC VIOLATE HIS CONSTITUTIONAL DUE PROCESS RIGHTS AND RIGHT TO COUNSEL, THIS COURT SHOULD EXERCISE ITS AUTHORITY UNDER 18 U.S.C. § 3142(I) AND ORDER MR. FANCHINI'S TEMPORARY RELEASE TO DEFENSE COUNSEL'S LAW OFFICES UNDER THE CUSTODY OF A PRIVATE SECURITY AGENCY PAID BY MR. FANCHINI SO THAT HE MAY HAVE A MEANINGFUL OPPORTUNITY TO PREPARE HIS DEFENSE**

The current state of Mr. Fanchini's pre-trial confinement does not permit him to conduct any meaningful review of the government's evidence and to have substantive communications with counsel about this evidence in preparation for trial.  Accordingly, Mr. Fanchini respectfully requests that the Court exercise its authority under 18 U.S.C. § 3142(i) and amend its detention order to allow Mr. Fanchini to make periodic daytime visits to defense counsel's offices under the custody of a private security agency and to be returned each evening to the custody of the MDC. See 18 U.S.C. § 3142(i) ("The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense.")

Such a remedy is necessary in this case for Mr. Fanchini to adequately prepare for trial because of the unique combination of circumstances that confronts him and his defense team.  These conditions include:  (1) a particularly large volume of evidence to be reviewed by Mr. Fanchini and his counsel in advance of trial, including hundreds of

16

hours of foreign wiretap recordings; (2) the fact that most of this evidence consists of materials in languages other than English; (3) the scope of the charges in the Superseding Indictment, which spans more than seventeen years; (4) Mr. Fanchini is not a native English speaker and, therefore, his communications with counsel are more time consuming and tedious; and (5) the MDC does not have the facilities to meaningfully accommodate Mr. Fanchini's trial preparation needs because, *inter alia*, it lacks the physical space to house the discovery materials in a private and secure area and lacks sufficient access to computers for review of electronic discovery.

        1.        <u>Punitive Conditions of Confinement for Pretrial Detainees Violate the Due Process Clause of the Fifth Amendment and the Sixth Amendment Right to Effective Counsel</u>

This Court must begin its review with the premise that Mr. Fanchini as a pretrial detainee is presumed innocent. <u>See</u> 18 U.S.C. § 3142(j) ("Nothing in this section [the Bail Reform Act] shall be construed as modifying or limiting the presumption of innocence.")  Strictly speaking, therefore, the federal government has no authority to "punish" him at all.  Over two hundred years ago, Blackstone said of this "dubious interval" between commitment and trial:

> Upon the whole, if the offense be not bailable, or the party cannot find bail, he is to be committed to the county goal by the Mittimus of the justice . . .; there to abide till delivered by due course of law . . . . But this imprisonment, as has been said, is only for safe custody, and not for punishment:  therefore, in this dubious interval between the commitment and the trial, a prisoner ought to be used with the utmost humanity, and neither be loaded with needles fetters, or subjected to other hardships than such as absolutely requisite for the purpose of confinement only. . . .

4 W. Blackstone, Commentaries at 300 (2004 ed.).

The Circuit Court for the District of Columbia, in <u>Campbell v. Magruder</u>, 580

F.2d 521, 527-28 (D.C. Cir. 1978), spoke about the difficult conflicts that arise out of

pretrial detention:

> Despite the presumption of innocence, our common law
> and constitutional heritage has refused to abjure the
> institution of pretrial detention.  The standards by which
> the constitutionality of conditions of pretrial confinement
> are to be measured are thus rooted in paradox.  No simple
> or even clear tests can grow from such crevices of
> constitutional logic.  The standards we evolve must
> acknowledge and account for numerous competing and
> conflicting interests.

<u>Id.</u>  The "competing and conflicting interests" in this case are between the government's

claim that pretrial detention is necessary both to assure the Court of Mr. Fanchini's

appearance at trial and to protect the safety of the community and Mr. Fanchini's

fundamental right to meaningfully prepare for his criminal trial, which is a necessary

component of the presumption of innocence.  <u>See</u> <u>McGinnis v. Royster</u>, 410 U.S. 263,

273 (1973) (holding that pretrial detainees should be afforded the full protection of the

presumption of innocence).

Under no circumstances, however, may these conflicting interests result in a

constitutional deprivation to the pretrial detainee.  As the <u>Campbell</u> Court held:

> Conditions of confinement that ***impede a defendant's***
> ***preparation of his defense*** (apart, of course, from the fact
> of confinement itself), or that are so harsh or intolerable as
> to induce him to plead guilty, or that damage his
> appearance or mental alertness at trial[ ], are
> constitutionally suspect and can be justified only by the
> most compelling necessity.

<u>Campbell</u>, 580 F.2d at 532 (emphasis added).

18

Two different but related constitutional rights are violated when the conditions of pretrial confinement cast doubt on the presumption of innocence by impinging on a defendant's meaningful opportunity to review evidence and prepare for trial. First, as stated in Campbell, a defendant's Fifth Amendment rights to due process may be violated when the conditions of confinement impede the preparation of his defense. See United States v. Gonzales Claudio, 806 F.2d 334, 340 (2d Cir. 1986) (finding that preventive detention may in some circumstances be fundamentally unfair to the pretrial detainee who maintains a presumption of innocence).

Pretrial detention that becomes punitive by preventing the detainee from adequately reviewing the evidence and preparing with his counsel violates his still recognized liberty interest and presumption of innocence. As the Second Circuit reasoned in a recent pretrial detention challenge: "[w]here the regulation at issue imposes pretrial, rather than post-conviction, restrictions on liberty, the 'legitimate penological interests' served must go beyond the traditional objectives of rehabilitation or punishment." United States v. El-Hage, 213 F.3d 74, 81 (2d Cir. 2000) (citing McGinnis v. Royster, 410 U.S. at 273). Recently, the Second Circuit more bluntly stated: "Penological interests are arguably not an appropriate guide for the pretrial detention of accused persons." Benjamin v. Fraser, 264 F.3d 175, 187 n. 10 (2d Cir. 2001); cf. Turner v. Safley, 482 U.S. 78, 89 (1987) (in a case involving convicted inmates, the Supreme Court held that if a prison regulation or condition "impinges on inmates' constitutional rights," the condition is still valid if it is "reasonably related to legitimate penological interest").[3] The government simply cannot overcome a pretrial

---

[3] Because Turner was a challenge by convicted inmates and not pretrial detainees, the same liberty interests were not at stake as here. See Benjamin v. Fraser, 264 F.3d at 187,

detainee's deprivation of due process on the grounds that the conditions of confinement are necessary for penological interests alone.

In addition to these due process concerns, Mr. Fanchini's Sixth Amendment right to effective counsel is also infringed when he cannot effectively communicate to his counsel because he has not had a meaningful opportunity to review the government's evidence against him.  See Benjamin v. Fraser, 264 F.3d at 185 ("unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the Sixth Amendment"); Johnson-El v. Schoemehl, 878 F.2d 1043, 1051 (8th Cir. 1989) ("Pre-trial detainees have a substantial due process interest in *effective* communication with counsel. . . . When this interest is inadequately respected during pre-trial confinement, the ultimate fairness of their eventual trial can be compromised.") (emphasis added); Lynch v. Leis, No. C-1-00-274, 2002 U.S. Dist. LEXIS 27604, at *17 (S.D. Ohio Feb. 19, 2002) ("Absent justification, restrictions which impose severe constraints on a pretrial detainee's ability to contact his attorney and *discuss matters of substance* violate the Sixth Amendment.") (emphasis added). Counsel cannot have substantive discussions with the client if the client does not have the opportunity to review the evidence that the government seeks to use against him.

    2.    <u>Mr. Fanchini's Current Conditions of Confinement Infringe Upon His Constitutional Rights to Due Process and Effective Counsel</u>

As explained in the factual background section above and in Mr. Fanchini's attached affidavit, his current conditions of confinement at the MDC are woefully inadequate for him to prepare his defense at trial and to assist his counsel to do the

_____

n. 10 (calling into question the appropriateness of the Turner standard as applied to pre-trial detainees).

same.  Mr. Fanchini has now been incarcerated in the United States over the last four

and one-half months and has been given little chance to review the government's

discovery that has been produced to date – which itself is only about a third of the

expected total production.

      The reasons for Mr. Fanchini's predicament are manifold:  (1) he is housed in a

dormitory unit that provides him no privacy and security to maintain and review the

discovery in his case; (2) despite asking almost two months ago for a secure storage bin

to keep his documents, he still has not been provided one; (3) he has been assigned a top

bunk in his unit, from which he cannot read large volumes of documents because of a

pre-existing back condition; (4) he cannot listen to the hundreds of hours of recorded

electronic discovery because he is given access to the law library only two hours per

week, and even during his assigned time he has been denied access because the

computers were occupied by other inmates; and (5) the MDC has denied him a place to

store the more than 40 boxes of discovery the government has predicted will  be

produced before trial. (See Fanchini Aff., Exhibit B.)

      These conditions clearly impinge upon Mr. Fanchini's due process rights to

prepare his defense at trial.  His pretrial detention, therefore, has become unduly

punitive in violation of the Fifth Amendment.  See Wolfish v. Levi, 573 F.2d 118, 133

(2d Cir. 1978) ("One of the most serious deprivations suffered by a pretrial detainee is

the curtailment of his ability to assist in his own defense", rev'd on other grounds, Bell

v. Wolfish, 441 U.S. 520 (1979)).

Also, in violation of Mr. Fanchini's Sixth Amendment right to effective counsel, as a result of his inability to review the evidence in his case, counsel has not been able to adequately discuss the issues relating to the accusations and defense.

3.    <u>This Court Has Authority Pursuant to 18 U.S.C. § 3142(i) to Order Mr. Fanchini's Temporary Daytime Release to Review Discovery</u>

Mr. Fanchini respectfully proposes a remedy to his currently unconstitutional confinement conditions:  the Court should exercise its authority under 18 U.S.C. § 3142(i) to allow his temporary release, under strict custody of private security guards selected by the government but paid for by Mr. Fanchini, for daytime visits to counsel's office, and to be returned to the MDC at night.  This way, he will be able to review the evidence in his case and prepare with counsel for trial while remaining in strict pretrial detention, satisfying the government's concerns about risk of flight and dangerousness.

Congress clearly contemplated the potential need for such alternative arrangements to custodial detention to deal with unusual cases when it drafted language to the Bail Reform Act of 1984.  Section 3142(i) of Title 18 specifically states:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States Marshal *or another appropriate person*, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i) (emphasis added).

Moreover, the Second Circuit Court of Appeals has approved of the use of private security agencies to monitor pretrial detainees as a condition of strict pretrial release.  See <u>United States v. Sabhnani</u>, 493 F.3d 63, 77 (2d Cir. 2007) (in case charging defendants with forced labor and harboring illegal aliens, bail conditions included

"private security officers [who] would [ ] wiretap defendants' telephone, monitor their computer use, search their children when they entered and left the family home, and escort defendants on all authorized trips outside their home"); see also, United States v. Brooks, No. 06 Cr. 550 (E.D.N.Y. Jan. 3, 2008) (Seybert, J.) (in high profile accounting fraud and insider trading prosecution of former CEO, court approved bail on condition of around-the-clock surveillance of defendant's apartment by armed private security guards, including agreement by parties that guards could use reasonable force).

In this case, Mr. Fanchini asks merely for the Court to authorize him to be transported by private, armed security guards to and from the MDC at least three days per week to defense counsel's offices in Manhattan for him to review discovery and prepare his defense with counsel. He would be under constant surveillance of the armed guards at counsel's office and then returned by the same security escort back to the MDC in the evening. This would continue until Mr. Fanchini has completed discovery review.

Mr. Fanchini is not seeking pretrial release. He merely asks the Court to modify his detention order as described above, and as authorized by the Bail Reform Act. See 18 U.S.C. § 3142(i) (subsection entitled "Contents of detention order.") While this provision of the Bail Reform Act has been infrequently applied, it is particularly suited for the unique problems confronting Mr. Fanchini.

The MDC would be hard pressed to ameliorate Mr. Fanchini's conditions to allow him to conduct adequate defense preparation. It would have to add considerable resources, including an additional private and secure area for Mr. Fanchini to store the government's evidence for review; dedicated access to a computer on a daily basis; and

a location where Mr. Fanchini physically could read and review the documentary evidence.  These requirements are not easily met in a facility that is already overcrowded with little free space or computer equipment.  Mr. Fanchini's proposed remedy would not impair the daily operations and security of the MDC.  The only requirement of the MDC under Mr. Fanchini's proposal is for it to search Mr. Fanchini each time he leaves and returns to the facility.  During his transport and stay at counsel's offices, Mr. Fanchini would be monitored by a private security agency, which could be selected and approved by the government.  Mr. Fanchini would agree to pay all costs associated with such an arrangement.

To avoid the discussed constitutional infirmities of Mr. Fanchini's current confinement, this Court, it is respectfully submitted, should exercise its express statutory authority under 18 U.S.C. § 3142(i) and order his temporary daytime release as detailed above, which would not diminish Mr. Fanchini's continued preventive detention.

This statutorily authorized proposal by Mr. Fanchini would also further the Court's interest in maintaining the presently scheduled dates for pretrial motions and trial.

## III.

## <u>CONCLUSION</u>

We respectfully request that, for the reasons stated herein, defendant Ricardo Fanchini's motions for expedited discovery and temporary release, pursuant to 18 U.S.C. § 3142(i), be granted in their entirety and the Court grant any additional relief that it deems just and proper.

DATED:     New York, New York
             June 10, 2008

                        Respectfully submitted,

             LAW OFFICES OF GERALD L. SHARGEL

By_____
             Gerald L. Shargel, Esq.
             Henry E. Mazurek, Esq.
             Evan L. Lipton, Esq.
             570 Lexington Avenue, 45th Floor
             New York, New York 10022
             (212) 446-2323
             *Attorneys for Defendant*
             *Ricardo Fanchini*